**KENTLAND COAL & COKE CO. et al. v. PUGH et al.**

Court of Appeals of Kentucky.
March 27, 1953.

Rehearing Denied June 19, 1953.

462

Hobson & Scott, Pikeville, LeWright Browning, Ashland, for appellants.

J. E. Childers, Pikeville, for appellees.

CLAY, Commissioner.

This suit was brought in equity by two coal companies, the owner and lessee of minerals on a tract of land in Pike County, to enjoin the principal appellee (hereinafter referred to as "appellee") from mining coal on the property and to quiet their title. Over the objection of appellants the controversy was submitted to the jury on an issue out of chancery, and pursuant to a verdict for appellee a judgment was entered in his favor. On this appeal appellants contend that because the case is so complicated and involves such a great detail of facts, the jury was unable to understand the issues and the verdict rendered was meaningless. They further contend the judgment was clearly erroneous because the great weight of evidence showed that they had the superior title.

We are inclined to the view that appellants' first contention has merit. The proper determination of this case does not so much rest upon conflicting testimony as upon the construction and legal effect of a number of deeds, patents and surveys. A careful examination of the record convinces us that the questions involved are indeed complicated and some of the evidence presented may well have been incomprehensible to a jury.

The verdict returned indicates that the jury was unwilling or unable to determine the true merits of the controversy. Three specific questions were addressed to it, in answer to each of which was the verdict, "We find in favor of the defendant". Such a verdict was not responsive to the questions. The submission of the case to the jury, however, is not reversible error because the Chancellor was not bound by the verdict. Yet we believe he gave it undue weight, and we think the judgment was contrary to the evidence.

The tract in dispute contains approximately 38 acres and lies in the Add Hollow section on the Dix Fork of Feds Creek. The western boundary of this property is a high ridge. It is agreed appellee owns land west of this ridge. His claim that his property extends eastwardly over the ridge and includes the disputed tract is based upon an 1857 patent issued to one Isham Slone.

Appellants acknowledge that appellee may have the superior title to the land encompassed within the boundaries of this Slone patent. Their contention is that such land does not include the tract in dispute, but that it lies much further west on the Motley Fork of Feds Creek. The proper location of this patent boundary is the crucial question in the case.

The beginning point in the Slone patent is "at a gum, a former corner of said Slone". The location of this gum is an important factor, and appellee's whole case rests upon proof that there is a marked gum west of the ridge above mentioned. Admittedly, if the calls in the patent are run out from this tree as a beginning point, the patent boundary would include the tract in dispute. The evidence to prove this is the natural object mentioned in the patent description consists of testimony by several persons, most of whom were relatives, that appellee's immediate predecessor in title, one Eli Miller, had pointed out this gum as marking the beginning point of the patent. There is also evidence that Miller at one time had a dispute about who owned land over in Add Hollow where the property involved is located. However, there is no evidence that Miller, or any of his pred-

ecessors, at any time had actual possession of the land on the Add Hollow side of the ridge. Nor did appellee undertake to show that his gum was on "a former corner" of any property owned by Isham Slone, although this is a significant part of the description.

Appellants undertake to establish the location of the gum at a point some distance west of where appellee claims it is by tying in the description in the Slone patent with another boundary about which there is no dispute. This boundary incloses land which was owned by Edmund Taylor prior to the time Slone's patent was issued. The east boundary of the Taylor property has a call "to a gum on a cliff", and the next call is "N 18 W". The first two calls in the Slone patent after the beginning "at a gum", are "N 18 W". There is no gum at the present time on the boundary of the Taylor property, but the description of the Taylor land makes it clear that there once was a gum there, and a witness testified that at the present time there are gum sprouts at that point. It thus appears that there was at one time a gum where appellants say it was.

If the Taylor property had been owned by Slone when his patent was issued, then it would appear rather convincing that the beginning corner at the gum would be on this property line because the patent description referred to other land owned by Slone. When Slone was issued his patent the record title was then in Taylor, so the description should properly have been "a former corner of Taylor" rather than "a former corner of said Slone". It appears, however, that approximately two years after the issuance of the Slone patent Taylor conveyed his property to Slone. Appellants argue that the date of the deed from Taylor to Slone is not controlling, but that in all probability Slone had agreed to buy Taylor's land before the date of the patent and that Slone may then have considered himself the owner of the Taylor land, and if so, it was proper for the patent to refer to the beginning point as a corner on Slone's other property. This argument is not too implausible, but there is no proof to support it.

It is therefore necessary for us to consider other evidence which indicates that the Slone patent location is where appellants contend. This other evidence in substance is that neither Slone nor any of his successors in title at any time, except in the deed to appellee, conveyed or attempted to convey any land the description of which would carry a boundary east of the ridge we have referred to.

Prior to the conveyance to Slone of the Edmund Taylor property (which contained approximately 200 acres), Slone had purchased 300 acres from William King which lay north of the Taylor property. With his 100 acre patent, he then owned or claimed at least 600 acres. In 1873 he conveyed to Edmund Taylor 600 acres "on the waters of the Motley Fork on Feds Creek". It is clear that the old Taylor and King lands which had theretofore been conveyed to Slone are located on or adjacent to the Motley Fork. If the Slone patent boundary is where appellants claim it is, then it would form with the King and Taylor lands an integral part of a 600 acre tract. On the other hand, if this conveyance to Taylor included the Slone patent land and it is located where appellee claims, then it would be a completely segregated piece of property which would bear no relationship whatsoever to the other 500 acres Slone conveyed to Taylor.

Let us now trace the course of title from Edmund Taylor to David Taylor to Eli Miller under whom appellee claims. Edmund Taylor conveyed to David Taylor 150 acres on Motley Fork with a beginning point "at the mouth of the Pine Hollow on a sugar tree", thence "running up the left hand side of the calls made by Isham Slone". The sugar tree on Pine Hollow is approximately on the southeast corner of the 100 acre Slone patent boundary as projected by a surveyor, assuming the beginning corner to be the gum on a cliff as appellants contend. Thus, this description would logically fit with appellants' scheme concerning the general location of this 150 acre tract. Ignoring the location of the patent boundary as contended for by appellants, it seems obvious that the 150 acres conveyed by this deed with a be-

464

ginning point in Pine Hollow could hardly include the easternmost boundary for which appellee contends, because the first call is in a northwesterly direction on calls made by Slone which could not possibly be the patent boundary where appellee has it located. Yet this is the deed upon which appellee must base his claim.

David Taylor subsequently conveyed this same property to Eli Miller, and the calls were changed. However, this later description ran to "Dill's Line", and it is established by the evidence that Dill's Line lies to the north of Pine Hollow. Whatever land this description actually conveyed, since it extends northwardly, it could not reasonably also extend so far eastward as to go beyond the ridge we have been considering.

Appellee's claim, as has been indicated, rests entirely on what Eli Miller had been conveyed or had otherwise acquired. Yet there is evidence that when a surveyor was trying to locate various tracts of land in the vicinity in the early 1900's, Eli Miller did not point out to him the gum which appellee claims is the beginning corner of the Slone patent. At that time, according to this witness, Miller did point out other trees which marked other boundaries to Isham Slone's patents or surveys.

In 1887 Miller and his wife conveyed the minerals upon and under "their farm", described as containing 280 acres. Nothing in the description in this deed indicates that Miller considered his farm as being bounded at any point by the Slone patent boundary, nor that it extended further east than the ridge. We think the evidence is convincing, as before indicated, that Miller had never been conveyed any land east of the ridge. His only claim was by word of mouth and he did not take possession of it. This 38 acres simply does not fit in with his "farm" west of the ridge. He could not, therefore, convey it to appellee.

For these reasons stated, we believe the Chancellor erred in entering a judgment for appellee.

The judgment is reversed with directions to enter judgment for appellants.